IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **QUINTON COLEMAN** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| v. ) | **Civil Action File No.:** |
| ) | |
| **FANI WILLIS, in her individual and** ) | |
| **official capacity** ) | |
| ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |
| *Defendant.* ) | |

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

Plaintiff Quinton Coleman files this Complaint against District Attorney Fani Willis in her official capacity, using section 1983 as the vehicle to move this Court to grant the relief sought by this complaint. The statute in question O.C.G.A. § 17-17-170 violates the U.S. Constitution and the Georgia Constitution as applied and facially, and the Defendant in her individual capacity has used this unconstitutional statute to knowingly violate the constitutional right of Mr. Coleman to a speedy trial under both the Georgia Constitution and U.S. Constitution.

## INTRODUCTION

Georgia has a flawed statutory framework, which facilitates gross violations of an unambiguous and well-established human right of its citizens. Currently, and as this complaint will demonstrate, Georgia citizens are being arrested (not indicted) for alleged crimes and then languishing in jails (or on house arrest)—for years—without the legal ability to request a speedy trial under O.C.G.A. § 17-17-170. This is because, in Georgia, a person arrested for a criminal offense must first be indicted/accused before his or her right to a speedy trial is available under O.C.G.A. § 17-17-170.

Thus, Georgia arrestees are left begging law enforcement officials—**for years**—to determine whether they will ever receive an indictment/accusation, so that, if indicted, they can finally assert their right to a speedy trial to prove their innocence. (See O.C.G.A. 17-17-170.) Georgia's legal framework on the right to a speedy trial and the right to not be held indefinitely on mere charges (presumption of innocence) directly contradicts regional and international frameworks designed to protect the rights of persons accused of criminal offenses (detainees, or otherwise).

As victims of this unconstitutional framework, Mr. Coleman, who has been waiting since May 2024 for a decision on his indictment, brings this action, requesting that this Court declare the framework/statute (O.C.G.A. 17-17-170) unconstitutional.

## JURISDICTION AND VENUE

1.

Jurisdiction is proper under 28 U.S.C. § 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events

and omissions giving rise to Mr. Coleman's claims occurred in this District and Division and (2) he is a citizen of Georgia.

## PARTIES

2.

**Quinton Coleman** is a resident and citizen of Georgia. Mr. Coleman, aged 39, is a fourteen-year army combat veteran, with six combat tours (three in Iraq and three in Afghanistan). Mr. Coleman currently holds an FBI-vetted secret security clearance. Mr. Coleman has also completed numerous government contracts, using his secret security clearance—with no disciplinary issues. In fact, he got his security clearance re-issued, and part of that process, Mr. Coleman was an investigated about this matter: the government renewed his clearance while commenting on the frivolity of this situation.

3.

**Defendant** Fani Willis is an elected Constitutional Officer serving as the District Attorney for the County of Fulton. DA Willis is being sued in her official capacity.

## STATEMENT OF FACTS

A. International and U.S. Constitutional Framework

4.

Arguably, the most agreed upon right in the world, from the American Convention on Human Rights (and other regional human rights instruments) to the International Covenant on Civil and Political Rights, is the following right of all people:

> Any person detained shall be brought promptly before a judge or other officer authorized by law to exercise judicial power and shall be **entitled** to trial **within a reasonable time** or to be released without prejudice to the continuation of the

proceedings. His release may be subject to guarantees to assure his appearance for trial.

(American Convention on Human Rights, Art. &, Rights to Personal Liberty); (see also European Convention on Human Rights, Art. 6, Right to a Fair Trial, stating, "[i]n the determination of his civil rights and obligations or of any criminal charge against him, everyone is entitled to a fair and public hearing within a reasonable time by an independent and impartial tribunal established by law…); (see also the African Charter on Human and Peoples' Rights, Art. 7, stating "the right to be tried within a reasonable time by an imperial court or tribunal.")

5.

The consensus among these regional treaties on this issue is inextricable from relevant international treaties, in particular the following: The International Covenant on Civil and Political Rights (ICCPR). The ICCPR, the blueprint for all subsequent regional treaties (ACHR, ECHR, ACHPR), states the following on this issue:

> Anyone arrested or detained on a criminal charge shall be brought promptly before a judge or other officer authorized by law to exercise judicial power and shall be **entitled** to trial **within a reasonable time or to release**. It shall not be the general rule that persons awaiting trial shall be detained in custody, but release may be subject to guarantees to appear for trial, at any other stage of the judicial proceedings, and should occasion arise, for execution of the judgement.
>
> Anyone who is deprived of his liberty by arrest or detention shall be entitled to take proceedings before a court, in order that that court may decide without delay on the lawfulness of his detention and order his release if the detention is not lawful.

(See ICCPR, Art 9.)

6.

The uniformity of these rights regarding criminally charged suspects/detainees, to the extent that the rights are mirror images of each other at both the regional and international level, is to promote consistency within the world community with respect to adjudicating these rights, both before international and domestic tribunals within each Sovereign.

7.

In fact, while the United States is known to withhold ratification of most treaties, choosing to be a signatory only (if that), the United States has ratified the ICCPR—noting reservations and the Supreme Court's stance that the ICCPR **has been instructive** regarding the interpretation of the U.S. Constitution. See Roper v. Simmons, 543 U.S. 551, 576 (2005).

8.

Relevantly, the U.S. Constitution grants the same right as the ICCPR, ACHR, ECHR, and ACHPR to a speedy trial, and thus prohibits indefinite amounts of time, or years, without a decision about indictment, which is essential to have a subsequent trial. (U.S. Constitution, Sixth Amendment.)

9.

In summary, when demonstrable evidence establishes that this human right is continuously violated, the world consensus is that steps must be taken to address this inhumane reality that has, and continues to victimize thousands, in Georgia.

B. **The problem with the Georgia Statute regarding the Right to a Speedy Trial**

10.

Georgia law only permits a speedy trial once a Georgia Citizen is indicted or an accusation is submitted. O.C.G.A. § 17-7-170. Therefore, if an arrested person is not indicted, then one cannot exercise a right to a speedy trial. Consequently, the right to a trial **within a reasonable time period is vitiated when the** time to determine an indictment/accusation **takes years**, a reality for hundreds if not thousands of arrestees awaiting an indictment/accusation decision by the Defendant. (See O.C.G.A. § 17-7-170.)

11.

The relevant part of the law specifically states:

Any defendant against **whom a true bill of indictment or an accusation is filed with the clerk for an offense not affecting the defendant's life may enter a demand for speedy trial** at the court term at which the indictment or accusation is filed or at the next succeeding regular court term thereafter; or, by special permission of the court, the defendant may at any subsequent court term thereafter demand a speedy trial. In either case, the demand for speedy trial shall be filed with the clerk of court and served upon the prosecutor and upon the judge to whom the case is assigned or, if the case is not assigned, upon the chief judge of the court in which the case is pending. A demand for speedy trial filed pursuant to this Code section shall be filed as a separate, distinct, and individual document and shall not be a part of any other pleading or document. Such demand shall clearly be titled "Demand for Speedy Trial"; reference this Code section within the pleading; **and identify the indictment number or accusation number for which such demand is being made**. The demand for speedy trial shall be binding only in the court in which the demand for speedy trial is filed, except where the case is transferred from one court to another without a request from the defendant…"

(O.C.G.A. § 17-7-170).

12.

Because of O.C.G.A. § 17-7-170, Georgia has no mechanism to ensure that district attorneys make a decision regarding indictments/accusations in a reasonable time. Consequently, too-many-to count Georgia citizens who are arrested for a criminal offense are lingering in jail, or on bond with an ankle monitor, or are on house arrest (with all kinds of conditions), **for years**, because these suspects/detainees are legally prohibited from asking for a speedy trial under Georgia's statute because they have not been indicted/accused. This must change.

### C. Federal law as an exemplar

13.

Federal law 18 U.S.C. § 3161 highlights the problem with Georgia law because an indictment generally must/shall occur within thirty days from the date the individual was arrested, a reality that ensures the arrestee can, at minimum, advocate for a speedy trial:

> **Any information or indictment** charging an individual with the commission of an offense **shall be filed within thirty days** from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

(U.S.C. § 3161)

14.

18 U.S.C. § 3161 attempts to respect the right to a trial within a reasonable time by placing an obligation on the government to get an information/indictment filed almost immediately upon arrest.

15.

In complete contrast to 18 U.S.C. § 3161, Georgia permits the Defendant to drag out its decision about indictment for years, negating the affected persons, such as the Plaintiff, from availing his or herself of the right to either go to trial or have their charges dismissed.

16.

Another effect of Georgia's scheme is that it empowers the District Attorney to leave charges hanging over the suspect's head as leverage to force compromised plea deals.

**D. Louisiana as an exemplar**

17.

La. Cr.P. § 701 respects the right to a speedy trial by expressly addressing "[t]he time period for filing a bill of information or indictment **after arrest** shall be as follows." The statutes goes on to distinguish between mandates that apply to when a defendant is "continued in custody" after arrest as opposed to when a Defendant is not continued in custody after arrest:

"(1) (a) When the defendant is **continued in custody** subsequent to an arrest, an **indictment or information shall be filed within thirty days of the arrest** if the defendant is being held for a misdemeanor and within sixty days of the arrest if the defendant is being held for a felony. (b) When the defendant is continued in custody subsequent to an arrest, **an indictment shall be filed within one hundred twenty days** of the arrest if the defendant is being held for a felony for which the punishment may be death or life imprisonment.

(2) (a) When the defendant is not continued in custody subsequent to arrest, **an indictment or information shall be filed within ninety days** of the arrest if the defendant is booked with a misdemeanor and **one hundred fifty days** of the arrest if the defendant is booked with a felony. (b) Failure to institute prosecution as provided in Subparagraph (1) of this Paragraph shall result in release of the defendant if, after contradictory hearing with the district attorney, just cause for the failure is not shown. If just cause is shown, the court shall reconsider bail for the defendant. Failure to institute prosecution as provided in this Subparagraph shall result in the release of the bail obligation if, after contradictory hearing with the district attorney, just cause for the delay is not shown."

18.

After establishing mandates with respect to making a decision on indictment or information, La. Cr.P. § 701 discusses mandates regarding a speedy trial after an indictment or information is made against a defendant.

E. **Florida as an exemplar**

19.

Florida actually address the right to speedy trial "without demand" and the right to a speedy trial with a demand, while also expressly distinguishing between these rights with respect to whether the arrested person has been charged by indictment or information, as opposed to no indictment or information:

"(a) Speedy Trial **without Demand**. Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (f), every person charged with a crime shall be brought **to trial** within 90 days of arrest if the crime charged is a misdemeanor, or within 175 days of arrest if the crime

charged is a felony. If trial is not commenced within these time periods, the defendant shall be entitled to the appropriate remedy as set forth in subdivision (p). The time periods established by this subdivision shall commence when the person is **taken into custody as defined under subdivision** (d) **[(d) Custody. For purposes of this rule, a person is taken into custody :when the person is arrested as a result of the conduct or criminal episode that gave rise to the crime charged; or (2) when the person is served with a notice to appear in lieu of physical arrest**.] A person charged with a crime is entitled to the benefits of this rule whether the person is in custody in a jail or correctional institution of this state or a political subdivision thereof or is at liberty on bail or recognizance or other pretrial release condition. This subdivision shall cease to apply whenever a person files a valid demand for speedy trial under subdivision (b).

(b) Speedy Trial upon Demand. Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (g), every person charged with a crime by indictment or information shall have the right to demand a trial within 60 days, by filing with the court a separate pleading entitled "Demand for Speedy Trial," and serving a copy on the prosecuting authority."

F.   **Briefly about Mr. Coleman**

20.

Mr. Coleman has been waiting nearly seven months for a decision as to whether he will be indicted by the Defendant.

21.

Mr. Coleman, aged 39, is a fourteen-year army combat veteran, with six combat tours (three in Iraq and three in Afghanistan).

22.

Mr. Coleman currently holds an FBI-vetted secret security clearance and has accomplished numerous government contracts, using his secret security clearance — with no disciplinary issues. In fact, when he had to get his security clearance re-issued,

part of that process was an investigation into this matter; the government renewed his clearance while commenting on the frivolity of this situation.

23.

Mr. Coleman is a verified, one hundred percent disabled veteran. Additionally, prior to becoming a deputy for Fulton County Sherriff's Office, Mr. Coleman was a deputy with Hampton Sheriff's Office, without any disciplinary issues.

### G. Bogus charges brought against Mr. Coleman

24.

On April 23, 2024, Mr. Coleman was pulled over for an alleged routine traffic stop regarding an alleged seat belt violation. There are five critical facts that must be understood before discussing other facts: (1) Mr. Coleman worked at the Fulton County Sheriff's Office; (2) at the scene on that day was Lt. Lynch, who worked in the law enforcement division with Mr. Coleman; (3) at all times relevant, Mr. Coleman was a certified P.O.S.T. law enforcement officer; (4) Mr. Coleman was an active deputy for Clayton County Sherrif's Office at the time he found out about the subject warrants; and (5) there is a video of this incident.

25.

The video clearly shows Mr. Coleman directed the officer who pulled him over, Officer Phillips, to verify with Lt. Lynch that he had worked with Fulton County Sheriff's Office. In fact, Officer Phillips called Lt. Lynch over the radio to verify that Mr. Coleman had indeed worked at Fulton County Sherrif's Office, but Lt. Lynch had just left the scene.

26.

Because Lt. Lynch had left the scene, Officer Phillips requested proof that Mr. Coleman had worked at Fulton County Sheriff's Office. In response to this request, Mr. Coleman showed old credentials on his cell phone. Officer Phillips then released Mr. Coleman.

**H.   The warrant**, **O.C.G.A § 16-10-20**

27.

Nearly two weeks passed, and Officer Phillips never sought a warrant for Mr. Coleman's arrest. Instead, the Chief of Chattahoochee Hills Police Department, Kevin Digou, interceded to seek an arrest warrant in his name.

28.

Chief Digou obtained an arrest warrant against Mr. Coleman, claiming that Mr. Coleman violated O.C.G.A. 16-10-20 by allegedly making a knowing, intentionally false statement/representation by presenting himself as a Fulton County Deputy. (See enclosure.) This makes no sense, and no jury is going to believe that Mr. Coleman knowingly and intentionally falsely stated/represented that he was currently a Fulton County Deputy because the video clearly demonstrates that Mr. Coleman told Officer Phillips to contact Lt. Lynch to verify that he used to work at Fulton County Sheriff's Office.

29.

It simply defies all common sense that Mr. Coleman would make an intentionally false representation, and then direct Officer Phillips to verify with Lt.

Lynch, a person who would inform Officer Phillips that Mr. Coleman no longer worked with Fulton County Sheriff's Office. There is no intent to violate the law.

### I. The warrant, O.C.G.A § 16-10-23

30.

Next, Chief Digou obtained a warrant against Mr. Coleman by asserting that Mr. Coleman violated O.C.G.A § 16-10-23. (See enclosure.) Specifically, Chief Digou stated that Mr. Coleman falsely presented himself as a peace officer with the intent to mislead Officer Phillips into believing that he currently was a peace officer. This makes no sense at all because, as P.O.S.T. records clearly show, Mr. Coleman was a certified peace officer at the time. P.O.S.T. will easily verify the truth of this statement.

### J. Real Motive

31.

The real and straight forward motive for attacking Mr. Coleman is a personal animus of Sheriff Labat against Mr. Coleman. First, Chief Digou states on record that he met with Lt. Lynch on April 23, 2024 "in reference to a person claiming to be a deputy with the FCSO." Lt. Lynch undoubtedly talked with Sheriff Labat about this situation, which took nearly two weeks to materialize into actual arrest warrants.

32.

Mr. Coleman has written proof that Sheriff Labat **continually and falsely accused Mr. Coleman of having an affair with his wife**. Mr. Coleman requested a meeting with Sheriff Labat to personally discuss this matter, but Sheriff Labat refused. Then, Mr. Coleman reached out to Sherrif Labat's Chief of Staff, Michael Shoates, who,

after being informed of the situation, agreed that Sheriff Labat was behaving inappropriately and impulsively, and thus tried to arrange a meeting with Sheriff Labat to resolve the situation. Sheriff Labat refused again and continued to harass Mr. Coleman.

33.

Afterwards, Mr. Coleman reached out to Fulton County Commissioner, Bob Ellis, and explained the situation. Commissioner Ellis directed Mr. Coleman to Fulton County Attorney, Y. Soo Jo. Attorney Soo Jo investigated the situation, reviewing text messages, phone call logs, and other information, including confirmation from Sheriff Labat's wife that Sheriff Labat was harassing Mr. Coleman. Based on her investigation, Attorney Soo Jo asked Mr. Coleman if there was anywhere else in the County that he would like to work. At the bottom, Mr. Coleman signed a severance agreement that permitted him to leave without owing money or returning anything to the county.

### K. The effects of Georgia's unconstitutional framework regarding Mr. Coleman's right to a speedy trial

34.

Because of Georgia's statutory framework, discussed above, Mr. Coleman has been waiting almost seven months for a decision on whether he is going to be indicted on these bogus charges. The reality is that he could be waiting for years to come. During this time, he has no statutory right to invoke Georgia's speedy trial statute, a right that would force the government to bring the case to trial, or dismiss the charges.

35.

Also, Mr. Coleman's P.O.S.T Certification as a Georgia Peace Officer is suspended until these bogus charges are resolved, a reality that makes the decision about indictment even more pressing since he cannot demand a speedy trial under the subject Georgia statute until that issue is resolved. And he cannot work as a Peace Officer in Georgia until this issue is resolved, forcing him to change career paths in Georgia. This framework is unconstitutional and is causing severe harm to Mr. Coleman and hundreds if not thousands of Georgia residents/citizens.

## COUNT I
## 42 U.S.C. 1983 – INJUNCTIVE AND DECLARATORY RELIEF
### (Against Defendant in her individual and official capacity)

36.

The Plaintiff fully incorporates the facts and assertions found in paragraphs 1–35, as if fully stated herein to support all allegations made in this Count.

37.

Based on the facts and assertions incorporated to support this Count, the statute at issue, . O.C.G.A. § 17-7-170, is unconstitutional (both facially and as applied); also Defendant has violated Mr. Coleman's State and Federal Constitutional right to a speedy trial, by use of this unconstitutional statute, and the harm is ongoing and non-monetary. Consequently, Mr. Coleman requests that this Court find the statutory framework in question is unconstitutional and order the Defendant to make a decision with respect to Mr. Coleman's indictment within 48 hours of this Court's Order on this matter because the failure to make a decision has gone on way too long.

## COUNT II
## ATTORNEY FEES AND COSTS OF LITIGATION

38.

The Plaintiff now fully incorporates the facts and assertions found in paragraphs 1–37, as if fully stated herein to support all allegations made in this Count.

39.

Based on the facts to support this Count, Mr. Coleman is entitled to attorney fees, under 42 U.S.C. § 1988, *inter alia*.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Coleman respectfully prays and requests a trial by jury and judgment of this Honorable Court against the Defendant as follows:

(a) The process issue and service be had on the Defendant;

(b) That judgment be granted in favor of the Plaintiff against the Defendant, on all matters this Court deem are matter of pure law, jointly and severally, for the injuries of the Plaintiff. And that all other matters be resolved by a jury;

(c) That the Plaintiff be awarded the equitable relief he seeks;

(d) That the Plaintiff recovers all costs of litigation, including reasonable attorney fees;

(e) That a jury trial be had on all issues so triable, and;

(f) That this Court enter and award such other and further relief to which the Plaintiff may be entitled as a matter of equity, or which the Court so determines to be just and proper.

Respectfully submitted this 1st day of November 2024,

/s/ **MARIO WILLIAMS**
Mario Williams
Ga. Bar No. 235254

**HUMANITY DIGNITY AND RIGHTS LLC**
5600 Roswell Road
Building C, Suite 103
Sandy Springs, Georgia 30342
(404) 341-4434
mwilliams@hdrattorneys.com
*Counsel for Plaintiff*